The writ is therefore dismissed and the prisoner remanded.

## SUPREME COURT.

### Malcomb Calhoun and others agt. The Delhi and Middletown Railroad Company.

*Town bonds — The conclusive effect of a judgment of a county judge under chapter 907 of the Laws of 1869, as amended by chapter 925 of those of 1871 — Ratification by the payment of interest — Estoppel.*

A judgment of a county judge, under chapter 907 of the Laws of 1869, as amended by chapter 925 of Laws of 1871 (providing for the issue of town bonds for railroad stock), which adjudges and determines that petitioners do represent a majority of the taxpayers of the town, as shown by the last preceding tax list or assessment-roll, and do represent a majority of the taxable property upon said list or roll becomes conclusive, unless action is taken to review such proceedings within sixty days after the last publication of notice of the judge's final determination.

The whole scheme of the act is, that the bonds are to issue, provided a majority of the taxpayers and property ask for it. Whether or not such majority have so asked, the county judge is to decide, and such

Calhoun agt. Delhi and Middletown Railroad Company.

decision, when made, conclusively establishes the only fact which gives authority for their issue.

Where such judgment has been unchallenged for eleven years, it will not, in a collateral action, be adjudged void for want of a literal and exact compliance with the statute, in the form of the petition presented, when the right to render the judgment sought does not depend upon such petition alone, but upon the fact that a majority of taxpayers, representing a majority of the property of the town, desired the issue of the bonds.

The act of 1871 was passed May twelfth and took effect immediately. The petition was framed under the act of 1869, and was presented May 6, 1871. It omitted to state what the act of 1871 has been held to require, viz.: "That the petitioners constitute a majority of the taxpayers of the town appearing on the last preceding assessment-roll, not including those taxed for dogs or highway tax:"

*Held,* that the proceeding is not void for the failure to state this fact. The true construction is, that from the time the act of 1871 was passed it became the law as to all proceedings thereafter, whether then pending or commenced subsequently, while all that had been done. before was supported by the first act, and must be judged by it. The judgment cannot be assailed upon the ground that it was not based upon a proper petition, because it was based upon a petition entirely proper and sufficient at the time it was acted upon.

The petition specified "The Delhi and Middletown Railroad *Company,*" which it further described as "an association in said county and state," as the *company* sought to be aided.

*Held,* that this was sufficient. There can be no objection to the use of the word "*company,*" or that it was styled "an *association*" and not a *corporation.*.

It is insisted that the adjudication of the county judge was void for want of a sufficiently verified petition. That there were nineteen petitioners instead of one; that some of those differed from others, and that only one was verified.

*Held,* that the several papers constituted, really, only a single petition, and were handed to the county judge at the same moment. Upon one of such papers was a verification by one of the petitioners, and it was for the county judge to decide from the evidence before him whether or not such verification extended to all the names appended to the several headings, and if he decided it did, the parties aggrieved should have sought their remedy under the act. In any event, however, the one paper verified as the statute required, and averring every fact which such act makes necessary, gave to the county judge jurisdiction to act. Its averments may have been untrue, but of such truth or untruth, that officer was to judge, and though he found it untrue, he

Calhoun agt. Delhi and Middletown Railroad Company.

was still authorized, if sufficient other taxpayers consented at the time of the hearing, to render the judgment authorized by the act.

Where the notice published by the county judge, upon the presentation of the petition, did not state the place where the county judge would be found upon the return day, but did designate the day, the time of the day, the month and year of the hearing:

*Held,* that in so doing it specified all that either the act of 1869 or 1871 required. In the absence of any designation of a place of hearing, that which the county judge ordinarily occupied for the transaction of business would be intended, and of its locality the taxpayers must be presumed to have been acquainted.

Where it was conceded that the adjudication was made and directed to be entered of record, and that it was "*entered*" in the proper clerk's office, there is nothing wanted to make the record complete.

Where it was insisted that the adjudication was void because the county judge did not, as the act of 1871 requires, publish notice of his final determination, "for three weeks at least, once in each week, in the same newspaper in which notice of such hearing was published as ordered."

*Held,* That the law does not make the validity of the judgment depend upon the publication, but upon the fact that it has been rendered. The want of publication does not invalidate the judgment, though it may lengthen the time for the allowance of a *certiorari* to review the proceedings.

Corporations, municipal or other, and their taxpayers or stockholders, may, as private individuals in the conduct of their affairs, so conduct themselves as to be estopped from questioning the authority of a person who has assumed to act in their behalf; and the recognition and adoption by them of acts professed to have been done for them may bind them as effectually as the conferring of the power so to do prior to their being done.

Where a large number of the taxpayers of a town, and professing to be a majority thereof, representing a majority of its property, asked the county judge of the county in which the town was situated for a judgment and action which would permit the issue of the bonds, such judge assuming to act in conformity with the requirements of the law, after notice, determined and adjudged that a majority of taxpayers and property had petitioned for the issue of such bonds, which judgment was entered of record; such judge appointing commissioners to issue the obligations of the town, which obligations were issued, and contained recitals showing their regularity, and assuming that all necessary and legal action had been taken to make them valid and binding upon the town; neither the municipality nor any taxpayer, since the rendition of such judgment and the appointment of commissioners, sought to review such judgment or to prevent the issue of the bonds, either of which could readily have been done, and for ten years, twice during

Calhoun agt. Delhi and Middletown Railroad Company.

the year, the interest has been paid upon the bonds thus issued by the proper officer of the town, its taxpayers, without objection, paying the amount levied upon them for that purpose:

*Held*, that the doctrine of acquiescence is applicable to this case, and because of such acquiescence, both by the town and its taxpayers, in the validity of the bonds, such acquiescence amounting to an actual adoption of them as the legal acts of the town, such town and its taxpayers are estopped from questioning their validity (LEARNED, *J.*, dissenting).

*Third Department, General Term, September,* 1882.

*Before* LEARNED, *P. J.,* BOCKES *and* WESTBROOK, *JJ.*

APPEAL from an order dissolving an injunction.

*J. H. Maynard,* for appellants.

*William Gleason* and *C. P. Collier,* for respondents.

WESTBROOK, *J.* — The plaintiffs appeal from an order of the Broome special term of the date of March 28, 1882, dissolving an injunction order granted January 2, 1882.

The action is brought by the plaintiffs, who are taxpayers of the town of Andes, Delaware county, against James Ballantine, supervisor and railroad commissioner of said town, the Delhi and Middletown Railroad Company, and certain other persons, who hold bonds of said town, purporting to be issued pursuant to the provisions of chapter 907 of the Laws of 1869, as amended by chapter 925 of the Laws of 1871, in aid of the said Delhi and Middletown Railroad, to restrain the payment of such bonds, and the interest thereon, and to have them adjudged void and cancelled.

So far as the dissolution of the injunction depended upon the absence of a bond as required by section one of chapter 531 of the Laws of 1881, the order of this court reversing the order of the special term denying the plaintiff's motion to file such bond *nunc pro tunc,* must be regarded as eliminating that question from the present appeal, which will then present solely the validity of the bonds which the action seeks to annul.

Calhoun agt. Delhi and Middletown Railroad Company.

As has already been stated the bonds sought to be invalidated purport to be issued under chapter 907 of the Laws of 1869, which was amended by chapter 925 of the Laws of 1871. The questions presented upon this appeal are predicated upon both acts, and, therefore, so much of the act as amended, as bears upon such questions will be stated, calling attention when necessary to any change made thereby. The act, as amended in 1871, required, if bonds were to be issued by a town to aid in the construction of a railroad, " a majority of the taxpayers of any municipal corporation, who are taxed or assessed for property, not including those taxed for dogs or highway tax only, upon the last preceding assessment-roll or tax list of such corporation, and who are assessed or taxed, or represent a majority of the taxable property upon said last assessment-roll or tax list," to make an " application to the county judge of the county in which such municipal corporation is situate " for that purpose. Such application was to be " by petition, verified by one of the petitioners, setting forth that they are such majority of the taxpayers, and are taxed or assessed for or represent such a majority of taxable property, and that they desire that such municipal corporation shall create and issue its bonds to an amount named in such petition, and invest the same, or the proceeds thereof, in the stock or bonds (as said petition may direct) of such railroad company in this state as may be named in said petition."

Upon receiving such application the county judge was directed to give notice by advertisement, " published in some newspaper in such county, or, if there be no newspaper published in said county, then in some newspaper printed in an adjoining county, directed to whom it may concern, setting forth that on a day therein named, which shall not be less than ten days, nor more than thirty days, from the date of such publication, he will proceed to take proof of the facts set forth in said petition as to the number of taxpayers joining in said petition, and as to the amount of taxable property represented by them."

Calhoun agt. Delhi and Middletown Railroad Company.

The act then declares: "It shall be the duty of the said judge, at the time and place named in said notice, to proceed and take proof as to the said allegations in said petition, and if it shall appear satisfactorily to him that the petitioners, or the said petitioners and such other taxpayers of said municipal corporations as may then and there appear before him and express a desire to join as petitioners in said petition, do represent a majority of the taxpayers of said municipal corporation, as shown by the last preceding tax list or assessment-roll, and do represent a majority of the taxable property upon said tax list or roll, he shall so adjudge and determine and cause the same to be entered of record in the office of the clerk of the county in which said municipal corporation is situated, and the judgment and the record thereof shall have the same force and effect as other judgments and records in courts of record in this state."

Provision is then made for a review of the proceedings before the county judge by *certiorari*, but such writ "must be allowed within sixty days after the last publication of notice of the judge's final determination;" or, if the judgment was rendered prior to the passage of the act of 1871, then such writ can only issue provided "it is allowed within sixty days after the passage of" such act. The court out of which the writ issues is required "to review all questions of law and of fact determined for or against either party by the county judge," and the section of the act from which the last quotations have been made then declares: "And the said courts or Court of Appeals, in appeals now pending and in all future proceedings, may reverse or affirm or modify, in all questions of law or fact, his final determination, or may remand the whole matter back to said county judge, to be again heard and determined by him. And it may by order direct that he proceed thereon *de novo*, in the same manner and with the same effect as if he had taken no action therein, or it may by such order specify how and in what particulars he shall hear and determine the same on such remanding thereof. Applications

Calhoun agt. Delhi and Middletown Railroad Company.

for *certiorari* shall be on notice. On review, persons taxed for dogs or highway tax only shall not be counted as tax-payers, unless that claim was made before the county judge. The county judge shall forthwith proceed to carry into effect all orders of any court on review under this act."

The act also empowers the supreme court, at general term, to compel the issue of bonds thereunder, and to " prevent by injunction the issue of said bonds, or any portion thereof, on notice and for good cause shown," and declares that " any justice of said court may grant a temporary injunction until such motion can be heard."

The provisions of the act under which the bonds issued have been so fully stated, in order that the questions involved upon the appeal may be properly understood. It is impossible, we think, to read those provisions without being impressed by the thought that they were intended and designed to prevent precisely such contests as this appeal presents. This is apparent from the fact that, while the decision of the county judge is declared to be a " judgment " and a " record," and to " have the same force and effect as other judgments and records of courts of record in this state," provision is also made for its review upon " all questions of law and of fact," for its reversal, affirmance or modification, for a new trial before the county judge, for a new hearing upon any specified particular, and for an injunction by the general term of this court to prevent the issue of the bonds, or any part thereof.

The machinery of the law is ample for the protection of every right, and the course of procedure throughout is so clearly given, and the powers of courts upon appeal are so minutely stated, that it is apparent that the legislature was aware, when it passed this statute, of the questions which, without such provisions, would continually be raised in regard to the validity of bonds issued by municipal corporations in aid of the construction of railroads, and to prevent such con-tests, and the injustice of having them declared void in the hands of innocent holders on account of non-compliance with

some provisions of the law under which they were issued, they provided, as has just been stated, for a formal adjudication by the county judge prior to their issue, whose decision, subject to review by *certiorari*, was final.

Having given the provisions of the statute, under which the bonds, which are the subjects of the action, were issued, and declared in a general way, what seems to us to be the object, which the statute had in view, the proceedings thereunder will next be stated.

There is no dispute but that on May 6, 1871, a petition, purporting to be signed by taxpayers of the town, and "verified by one of the petitioners," was presented to the then county judge of Delaware county, asking that bonds of the town of Andes, to the extent and amount subsequently put in circulation, should be allowed to issue. Such petition contained every requirement, as will be hereinafter shown, made necessary by the law then in force.

Neither is it denied but that the county judge, upon receiving such petition, gave notice by advertisement in a newspaper published in the county of Delaware, and in the very town sought to be bonded, that on a day therein specified, which was, as the act required, "not less than ten days, nor more than thirty days from the date of such publication," that he would "proceed to take proof of the facts set forth in such petition, and as to the amount of taxable property represented by them."

On the day mentioned in the notice (May 22, 1871), the then county judge of Delaware county made an adjudication, which, after reciting the petition and the publication of the notice, further recited and adjudged as follows : "Whereas, due proof as to the said allegations in said petition having been made before me, and it appearing satisfactory to me that said petitioners do represent a majority of the taxpayers of said town of Andes, as shown by the last preceding tax list or assessment-roll, and do represent a majority of the taxable property upon said list or roll, on motion of White and Jacobs,

attorneys for said petitioners, I do hereby adjudge and determine that said petitioners do represent a majority of the taxpayers of said town of Andes, Delaware county, as shown by the last preceding tax list or assessment-roll, and do represent a majority of the taxable property upon said list or roll, and do hereby adjudge and determine that the same be entered of record." To this adjudication and determination the said county judge appended his name and official title.

On the same day (May 22, 1871), the appointment of commissioners was made, one of whom resigned November 15, 1871, and such vacancy was immediately filled. Bonds to the extent of $98,000, payable September 1, 1901, in sums of $100, $500 and $1,000, with coupons attached providing for the payment of interest semi-annually on the first days of March and September in each year, have been issued, many of which are held and owned by the defendants. From the date of the issue of such bonds until the present action was commenced, interest thereon has been regularly and promptly paid, and at the annual session of the board of supervisors of the county of Delaware, which terminated December 10, 1881, upon the report of James Ballantine, one of the defendants, as supervisor of the town of Andes, such board caused a tax to be levied upon the town of $6,650 for the purpose of meeting the coupons for interest due March 1 and September 1, 1882. This money has been collected from the taxpayers of the town, and paid to the supervisor for the purpose of meeting such interest. The injunction, which has been dissolved, and from the order dissolving which this appeal has been brought, restrained the defendant Ballantine from paying the interest to the holders of such bonds, and the defendants owning such bonds and coupons from transferring the same, or any part thereof.

There is no question upon the papers but that the holders of the bonds and coupons have paid full value for the same, and there is affirmative proof by some of them that they were purchased at par, and in some instances above it. The sole

grounds upon which the injunction is sought are, that the petition presented to the county judge was insufficient to confer jurisdiction, that the notice of hearing was defective, and that, in fact, such bonding was not consented to by a majority of the taxpayers of the town of Andes representing a majority of the taxable property of such town, as shown by its last assessment-roll previous to such application.

In the discussion of the objections which have been made to the form of the application or petition presented to the county judge, and to the notice of hearing, which will be first considered, it is important to inquire how far these objections are available in this action. The general doctrine that an officer clothed with power by a special proceeding must strictly pursue his authority is unquestionable, but its applicability to this action, which seeks collaterally to review the decision and determination of the county judge of Delaware county with reference to the bonds in controversy, is more than doubtful. The legislature, it will be conceded, had the power to prevent the operation of the rule in proceedings of the character sought to be annulled. Has it taken them out of such general rule? It is true that the course of procedure is clearly prescribed, but it has also provided for an inquiry by the county judge to ascertain whether or not the parties who apply to have a town bonded "do represent a majority of the taxpayers of said municipal corporation as shown by the last preceding tax list or assessment-roll, and do represent a majority of the taxable property upon said list or roll," and if he finds that they do, then "he shall so adjudge and determine, and cause the same to be entered of record in the office of the clerk of the county in which said municipal corporation is situate." Such adjudication and determination is then declared to "have the same force and effect as other judgments and records in courts of record in this state." Giving the decision of the county judge of Delaware county that effect — and in its form he has followed literally the words of the statute — is it to be pronounced a nullity in a collateral

Calhoun agt. Delhi and Middletown Railroad Company.

action merely because, in some unimportant particulars, the petition or application or the notice of hearing do not conform to the requirements of the statute ?

It is apparent that the whole scheme of the act is that the bonds are to issue, provided a majority of the taxpayers and property ask for it. Whether or not such majority have so asked the county judge is to decide, and such decision, when made, conclusively establishes the only fact which gives authority for their issue. To pronounce, therefore, any issue void, in spite of the will of the taxpayers of the town, of which the recorded judgment is unanswerable proof, upon some technical objection of form, would be the substitution of shadow for substance in the administration of justice. What has just been stated to be the scheme of the act is shown, not only by its general provisions, but also by the fact that, without their names being signed to any petition, other taxpayers than those who subscribed the original petition are expressly authorized to appear before the county judge on the day of hearing, and then and there to unite in the application, and when so appearing the law makes it obligatory upon the judge, in his decision, to regard them as petitioners for the bonding. It certainly would be remarkable if a judgment of a court of record of this state should be held a nullity in a collateral action, merely because of some technical defect in the form of the summons, or because in the statement of the cause of action in the complaint there was an omission of some merely formal averment, whilst it still contained a substantial statement of the cause of action which the judgment was rendered to enforce. And so in this case, it would be equally remarkable if a judgment, unchallenged for eleven years, and declared by the act under which it was rendered to "have the same force and effect as other judgments and records in courts of record in this state;" should be adjudged void for want of a literal and exact compliance with a statute in the form of the petition presented, when the right to render the judgment sought did not depend upon such

Calhoun agt. Delhi and Middletown Railroad Company.

petition alone, but upon the fact that a majority of taxpayers, representing a majority of the property of the town, desired the issue of the bonds. It seems to us clear, then, that none of the technical objections which have been made either to the form of the petition presented to the county judge, or to the notice of hearing, are available in this collateral suit. The whole policy of the act forbids their consideration. This is apparent, as has already been stated, not only from the effect which it declares shall be given to the judgment, but also from the definite provisions made for its review, the careful enunciation of the powers of the appellate court therein, extending not only to its reversal, affirmance or modification, in whole or in part, but to the sending back of the proceeding for further hearing upon any one point, and the lodgment in the general term alone of the power to grant an injunction to restrain the issue of the bonds in conformity with such judgment. The equity of this position is obvious. Under the apparent sanction, at least, of legislative authority, and the solemn and formal judgments of judicial officers, what purport to be valid obligations of towns have been issued to the extent of millions of dollars. These obligations have passed into the hands of innocent purchasers — oftentimes, as in this case, into the hands of institutions which are the depositories of the savings of the poor — and such holders are generally incapable of detecting flaws in legal proceedings. If, therefore, any other rule than the one stated should be adopted, parties can shift from themselves to others the burdens they ought to bear, for the reason that they had either voluntarily assumed them, or had been so careless as not to prevent their creation by the use of means placed at their disposal. While insisting, then, that the act forbids the criticisms, which have been made upon the proceedings had by and before the county judge of Delaware county, we will still proceed to examine the objections made to the application and to the proceedings had prior to the rendition of the judgment.

Calhoun agt. Delhi and Middletown Railroad Company.

The act of 1871 was passed May twelfth, and took effect immediately. The petition was framed under the act of 1869, and was presented May 6, 1871. It omitted to state what the act of 1871, upon a direct proceeding to review action thereunder, has been held to require (*Town of Wellsborough* agt. *The N. Y. and C. R. R. Co.*, 76 *N. Y.*, 182), "that the petitioners constitute a majority of the taxpayers of the town appearing on the last preceding assessment-roll, 'not including those taxed for dogs or highway tax.'" and for a failure to state this fact it is claimed that the whole proceeding is void.

This objection is predicated upon the erroneous legal assumption that the act of 1871 repealed that of 1869, and rendered all proceedings taken under the latter, prior to the passage of the former, of no effect. The act of 1871 simply amended that of 1869. This is so expressly declared in its title, and while it contains new provisions, it also states how certain sections of the old act should thereafter read. In *Ely* agt. *Holton* (15 *N. Y.*, 595) it was held that, "the effect of an amendment of a statute made by enacting that statute 'is amended so as to read as follows,' and then incorporating the changes or additions with so much of the former statute as is retained, is not that the portions of the amended statute which are merely copied without change, are to be considered as having been repealed and again re-enacted, nor that the new provisions or the changed portions should be deemed to have been the law at any time prior to the passage of the amended act. The part which remains unchanged is to be considered as having continued the law from the time of its original enactment, and the new or changed portion to have become law only at and subsequent to the passage of the amendment." And precisely this and no more was held in *Angel* agt. *Town of Hume* (17 *Hun*, 374) and *Syracuse Savings Bank* agt. *Town of Seneca Falls* (86 *N. Y.*, 317), the two cases cited by the counsel of the appellants. In the former judge SMITH (*pages* 379, 380) said: "The true construction we apprehend

Calhoun agt. Delhi and Middletown Railroad Company.

is that from the time the act of 1871 was passed it became the law as to all proceedings thereafter, whether then pending or commenced subsequently, while all that had been done before that time was supported by the first act, and must be judged by it." In the latter case, EARLE, J. (*page* 322), in speaking of this precise objection, said: "That judgment cannot be assailed upon the ground that it was not based upon a proper petition because it was based upon a petition entirely proper and sufficient at the time it was acted upon."

These authorities effectually dispose of the objection under consideration. The act of 1869, which was the one in force when the application was presented, required no statement that the petitioners were a majority of the taxpayers of the town, "not including those taxed for dogs or highway tax only." That provision was incorporated for the first time in the act of 1871. The object evidently was to prevent persons who were taxed for dogs, or a highway tax only, from being counted in determining whether a majority of the taxpayers of a town desired its bonds to issue. In other words, it defined who were the taxpayers who had the right to make the application. The judgment and decision of the judge was in the precise form that the act of 1871 required (*sec.* 2), and in reaching that conclusion it is to be assumed, nothing to the contrary appearing, that he obeyed the law which then governed his action.

It is further argued that the petition failed to state "that The Delhi and Middletown Railroad Company, in aid of which these bonds were to be issued, was a *corporation* in this state." The answer to this objection is that neither the act of 1869 or 1871 requires any such fact to be stated. The language of both acts requires the petition to state what "railroad *company* in this state" is desired to be aided. Precisely this language the petition adopts, and it specifies "The Delhi and Middletown Railroad *Company*," which it further describes as "an association formed in said county and state" as the *company* sought to be aided. In *The People* agt.

*Spencer* (55 *N. Y.*, 1), which was a *certiorari* brought to review the action of the county judge, the difficulty was that the petition failed to state where " The Rochester, Hornellsville and Pine Creek Railroad *Company*" was located. No objection was made upon the use of the word "*company*," or that it was styled "an *association*" and not a *corporation*. Whatever, therefore, was said in that case about "a domestic corporation" must be deemed to apply to the facts then presented. It seems to have been assumed that the existence of the corporation was alleged, but its location was undescribed. In this, however, that difficulty is obviated, and the only objection to it is that the petition too literally follows the language of the statute.

The appellants also insist that the adjudication by the county judge was void for want of a sufficiently verified petition. It is insisted that there were nineteen petitions instead of one, that some of those differed from others, and that only one was verified.

The petitions are identical in form except in three instances, in which, though otherwise precisely like the others, there is a condition expressed "that said road is located by Fish Lake and Shavertown." As the headings are identical, the various papers presented at the same time may be regarded as one petition. The act does not require the signatures to be appended to a single heading, and the presentation of all the papers at the same moment is one declaration or petition asking that the bonds should issue. The condition, appended in some instances, simply expresses in words the desire of the persons whose names are affixed thereto to unite in the general request, provided the road should be located as therein expressed. Such a modification of or reservation contained in the petition was not only a natural right, but is expressly authorized by section one of the act of 1871, which declares: " The petition authorized by this section may be absolute or conditional, and if the same be conditional the acceptance of a subscription founded on such petition shall bind the rail-

road company accepting the same to the observance of the condition or conditions specified in such petition; provided, however, that non-compliance with any condition inserted in such petition shall not in any manner invalidate the bonds created and issued in pursuance of such petition." As a fact, according to the statement upon the argument, the railroad was located "by Fish Creek and Shavertown," and, therefore, no ground of complaint upon that score really exists.

It has already been stated that the several papers, which constituted really only a single petition, were handed to the county judge at the same moment. Upon one of such papers was a verification by one of the petitioners, and it was for the county judge to decide from the evidence before him whether or not such verification extended to all the names appended to the several headings, and if he decided it did, the parties aggrieved should have sought their remedy under the act. In any event, however, the one paper verified as the statute required, and averring every fact which such act makes necessary, gave to the county judge jurisdiction to act. Its averments may have been untrue, but of such truth or untruth that officer was to judge, and though he found it untrue, he was still authorized, if sufficient other taxpayers consented at the time of the hearing, to render the judgments authorized by the act.

It is also objected that the notice published by the county judge upon the presentation of the petition was defective in not specifying the place where his inquiry would be conducted.

The notice was in the exact form required by both the act of 1869 and that of 1871. It is true it did not state the place where the county judge would be found upon the return day. It did, however, designate the day, the time of day, the month and year of the hearing, and in so doing it specified all that either law required. It is also true that section two of both acts requires the judge to proceed "at the time and place named in said notice," but the assumption that the

Calhoun agt. Delhi and Middletown Railroad Company.

notice would specify a place of hearing is a very different thing from requiring such specification therein. In the absence of any designation of a place of hearing that which the county judge ordinarily occupied for the transaction of business would be intended, and with its locality the taxpayers of Delaware county must be presumed to have been acquainted. There is no pretense in any of the papers that any person was misled or deceived as to the place of hearing, and in the absence of any such averment this objection must also be overruled. It would certainly (adding in this connection an argument already presented as applicable to all these objections) be remarkable if a judgment of a court of record should, in a collateral proceeding, be held void and of no force or effect merely because the notice of trial did not specify the place in the county at which the trial would take place.

It is said that the judgment of the county judge was not conclusive because it was not entered of record. The point does not specify what was omitted to make the record complete. The statute of 1871 (and that of 1869 is similar) simply requires that officer to " adjudge and determine, and cause the same to be entered of record in the office of the clerk of the county in which said municipal corporation is situated." The county judge did make a formal adjudication in writing as required by law to justify the issue of the bonds, and did thereby " adjudge and determine that the same be entered of record." The complaint avers that such " adjudication of the then county judge of Delaware county was *entered* in the office of the clerk of said county on the 22d day of May, 1871." It being conceded that the adjudication was made and directed to be entered of record, and that it was " *entered* " in the proper clerk's office, it is difficult to see what was wanting to make the record complete.

It was also insisted upon the argument that the adjudication was void because the county judge did not, as the act of 1871 requires, publish notice of his final determination " for

three weeks at least, once in each week, in the same newspaper in which notice of such hearing was published as ordered."

A careful reading of the papers has failed to discover the proof of such want of publication, or any averment thereof in the complaint. Assuming, however, that it was not so published the point is still untenable. The law does not make the validity of the judgment to depend upon the publication, but upon the fact that it has been rendered. The want of publication does not invalidate the judgment, though it may lengthen the time for the allowance of a *certiorari* to review the proceedings. The fourth section of the act of 1871 limits the time for allowing such writ by providing "no writ of *certiorari* shall be allowed unless said writ shall be allowed within sixty days after the last publication of notice of the judge's final determination, as provided in section two of this act, and where such judgment is so entered prior to the passage of this act, unless said writ is allowed within sixty days after the passage of this act."

The various objections which were made to the form of the proceedings had before the county judge have been considered and found untenable, and we now come to the last and, perhaps, principal point of the appellants, that "the bonds are void because a majority of the taxpayers of the town did not sign the petition ; nor did the person signing own or represent a majority of the taxable property of the town."

This point is not made against bonds, as already stated, which have been issued and purport to bind towns when taxpayers have had no opportunity to be heard, but against some which have been issued under a law which provided for a hearing before a judicial tribunal on notice, an adjudication by such tribunal, and an opportunity for review. The proceedings have been examined and found to be regular, and the question presented is, can the decision of that tribunal, upon a question of fact, be held in this collateral action, erroneous? Whether or not a majority of the taxpayers, repre-

senting a majority of the taxable property of the town of Andes, asked for the issue of the bonds, the county judge of the county of Delaware, within which the town was located, was authorized to decide, and his judgment, as has already been several times stated, is declared by statute, when made, "to have the same force and effect as other judgments and records in courts of records in this state." Words are useless if his decision can in this action be held erroneous and void, and no reported case to which we have been referred maintains any such proposition. On the contrary, the distinction between bonds issued under the acts of 1869 and 1871, and their issue by towns under acts which make the affidavit or certificate of some officer evidence of the requisite consents having been obtained, is manifest and has been repeatedly recognized. The judgment of the county judge has been held conclusive upon the question of consent by the taxpayers under the acts referred to, whilst the right to question the truth of an affidavit only is maintained. In *Town of Springport* agt. *Teutonia Savings Bank* (84 *N. Y.*, 403), which is one of the cases cited by the appellants, in speaking of the effect to be given to an affidavit of a town officer, judge RAPALLO (*page* 410) said : " The case of *People ex rel. Yawger* agt. *Allen et al., Assessors* (52 *N. Y.*, 538, 542), draws the distinction between the effect of this *affidavit* and of the *judgment* of a county judge under other bonding acts." In the case referred to by judge RAPALLO, judge GROVER (*pages* 541, 542), after pointing out the difference between the statutes which require a judgment by the county judge and those which require an affidavit by some officer, says : " In the former the county judge, if he finds the petition sufficient in number and amount of property, is to give judgment accordingly, which is made *conclusive* proof of such facts. In this the assessors, or a majority are to make an affidavit, which is made *proof* of the facts." Nor was this new doctrine. In the *People* agt. *Smith* (45 *N. Y.*, 772) the court of appeals had held the decision of the county judge final. On

Calhoun agt. Delhi and Middletown Railroad Company.

page 777, in announcing the opinion of the court, judge GROVER said : " It must be borne in mind that the determination is final, not only as to taxable inhabitants who appear and contest the fact, but equally so as to those who do not appear."

It is scarcely necessary to add a word upon this point.   The counsel for the plaintiffs incorrectly stated the provisions of the bonding act when he argued that the jurisdiction of the county judge to make the order depended upon the fact that the consent of a majority of the taxpayers of the town had been obtained to the issue of the bonds. ' It would be more accurate to say, that while such act contemplates a consent to the issue by a majority of the taxpayers of the town representing a majority of its property, it also provides a mode for the ascertainment and establishment of that fact ; and that when the giving of such consent has been adjudged and declared, as therein pointed out, such judgment, unless reversed, conclusively and forever establishes that fact.   It is true that the petition must allege that the requisite consent has been given, but its possible untruth in this particular is recognized when the officer is directed to count not only the names signed to such petition, but also such as appear upon the return day and then desire to unite in the application.   Provision is then made for an adjudication by the officer to whom such petition must be presented upon the very question now sought to be raised, and that adjudication, unless reversed, is, as has just been stated, conclusive.   The decision when made may be wrong, and in a general sense the county judge had no power to make a wrong decision, but error is inseparable from human tribunals, and, if committed, it cannot be made legally to appear to the court in a collateral action any more than the wrong of any other judgment of a court of record can thus be shown, because the statute has prohibited it.

Having examined the various objections made upon the argument to the validity of the bonds sought to be invalidated, and found them untenable, this opinion might terminate with the direction to enter an order affirming that of the special

term, from which the appeal is taken. The importance, however, of this case, and the obvious fact that there are many other suits already brought, and that many more may be brought, involving the validity of bonds issued by towns in aid of railroads, induce us to comment upon another point which the papers upon this appeal sharply present, and that is the effect of the conduct of the town and its taxpayers with reference to the bonds now sought to be invalidated.

In the examination of this question it is not our purpose to discuss any point of difference existing between the federal and state courts as to the force to be given to recitals in bonds of this character. It may be proper, however, to say that our own views coincide with the court of appeals, expressed in *Cagwin* agt. *Town of Hancock* (84 *N. Y.*, 532, 542) and several other cases, that as a rule such instruments do not become the obligations of the municipality unless the prerequisites required by the law authorizing their issue have been complied with. While maintaining this doctrine, however, we further insist that when a municipal corporation is authorized, through the action of its taxpayers, to have appointed for it agents or commissioners to issue bonds or evidences of indebtedness in its behalf, and when such agents or commissioners, who have apparently been so appointed in pursuance of the authority of law, do issue in its behalf what purport to be the obligations of the municipality, which, after their issue, such municipality and its taxpayers, by both negative and affirmative action, treat as valid and binding obligations during a series of years, that then neither the municipality nor its taxpayers can urge any objection to their validity founded upon alleged irregularity in the appointment of such agents or commissioners, or in the issue of the obligations. We do not, of course, intend to affirm that an act of a municipal corporation expressly forbidden, or *ultra vires*, can be upheld upon the ground of acquiescence, but that which it may legally and lawfully do, when a majority of its taxpayers, representing a majority of its property, consent, and which purports to have been thus

done, will be upheld when long acquiesced in; and it will especially be so held in favor of parties who have in good faith parted with their money and property on the assurance of its validity given to them by such past actions of such municipality and its taxpayers.

This doctrine is abundantly sustainable both upon principle and authority. In reaching such a conclusion by reason alone, without the aid of adjudged cases, we have to apply only familiar principles. The legal rule, that when one individual has assumed to act for another as his agent, and the party purporting to be bound adopts the act as his own, that such adoption is as effectual to validate the act as an original authority, is well settled. So too where the act of the agent purports to bind a number of persons, either by making an obligation professedly for them in their individual names, or executing it in some name which represents them as individuals, each person who adopts and ratifies the act as his is bound by it. No good reason can be given why this general and well settled rule of law should not apply to the taxpayers within a municipal corporation. It is true that when the obligation of a municipality issues it does not in words profess to be one which individuals are to discharge, but it is in fact one of that character. When made and delivered as the evidence of a debt, which the corporate body is authorized to contract and to issue therefor its written promise to pay, such promise of payment is really the promise of individuals, because out of their property its payment must be enforced. The name of the corporation in which the obligation issues really represents them, and, if unauthorized, solely because they have not consented to such issue, they and each of them must be careful not to adopt it as theirs, for such adoption, as adoption of what purport to be individual obligations, makes it their act as effectually as an original authority would do. Of course, in enunciating this principle, we intend to apply it only to such acts as may be lawfully done by the municipality to bind the property within its limits. That which the law forbids it to do it cannot do, but that which it

Calhoun agt. Delhi and Middletown Railroad Company.

may do by and with the consent of the taxpayers will be assumed to have been so done when such taxpayers, during a series of years, have by their action most emphatically declared that such consent was in fact given. If the relief sought by this action is granted, though in form the bonds of a town are declared void, yet individuals only are relieved from the payment of obligations which they had power to authorize and in regard to which they have so acted as to'forbid the denial by them that such authority had been conferred. If the validity of the bonds in question had only been acquiesced in by the officers of the town, as the ratification in such a case would be the adoption by agents of acts by others also professing to be the agents of the town, the estoppel upon the taxpayers would not be so apparent, though even in such a case, under certain circumstances, it might apply. In this case, however, not only have the officers of the corporation again and again admitted by their official action the validity of the bonds, but each taxpayer of the municipality has year by year, for ten successive years, when called upon to contribute his or her share of the annual interest, had the question of the adoption or the repudiation of the bonds sharply presented. It is idle to argue that the payments were involuntary. This is not true. Any of the taxpayers had the right to prevent the imposition of the tax or its collection when imposed. Nothing of the kind, however, was for ten years attempted, and during all that period, with perfect and complete knowledge of every fact, parties have assumed to act as their agents, not only in the issue of obligations purporting to bind their property, but also in the collection from them and each of them of the yearly interest due upon the securities issued. Not a single taxpayer during these past years has, so far as this case discloses, ever expressed any dissent from the action of agents who claimed to exercise powers legally conferred, but on the contrary, each one has, for himself and herself, by paying his and her share of the interest annually, deliberately and formally admitted the authority to

bind the property taxed. Under such circumstances, we see no more reason to permit the present plaintiffs, who have thus acted, to question the validity of these obligations, than they would be permitted to question obligations professing to bind them as individuals which they had for ten years recognized as theirs by making annual payments thereon. In principle, the cases are identical, and the distinction is in name and not in substance. In both, when obligations are issued, the individual property is reached by a judgment thereon, and if it is competent for the individual to assent to an act as his when the act professes to be for him as an individual, it is equally competent for him, as a member of a municipal corporation, to assent to the act as that of the corporation, and as such, creating a valid obligation in his behalf, and when all those who bear the burdens of the municipality have thus consented, each one and all are thereafter estopped from questioning the act as obligatory upon him or her. This reasoning clearly commends itself to equity and good conscience, for the effect of what the taxpayers and officers of the town have done is obvious. They have thereby established the credit of obligations they now seek to annul. Such obligations, on the faith of their action, were bought as investments not only by private parties for themselves, but also by institutions and persons as investments for trust funds, and now, when held outside the town, the individuals who have deceived others in becoming purchasers seek at this late day to compel such buyers to lose the money they have in good faith paid. The defense does not commend itself to any just sense of right and fair dealing, and is no defense in fact in law, as has been frequently declared, both in elementary treatises and in adjudged cases, as we shall next proceed to establish.

Judge DILLON, in his valuable work upon Municipal Corporations (*vol.* 1, *sec.* 548, *3d ed.*), says : " As experience shows that the officers of public and municipal corporations do not guard the interest confided to them with the same vigilance and fidelity that characterize the officers of private corporations, the

principle of ratification by laches or delay should be more cautiously applied to the former than to the latter. *But the principle applies to both classes of corporations as well as to natural persons.* The general doctrine is undoubted that there is ordinarily no estoppel in respect to acts which are in violation of the constitution, or of an act of the legislature, or which are obviously *ultra vires.*  *  *  *  As to *irregularities* in the exercise of an express power to issue bonds, and particularly in respect to steps connected with preliminary conditions, the failure of the municipality or taxpayer to enjoin the issue, followed by long acquiescence, especially when this is accompanied by affirmative acts which recognize the validity of the bonds, such as receiving and holding the stock or consideration for the bonds, *or paying interest on them for a series of years,* has been held to estop the municipality from defending, on the ground of non-compliance with the conditions precedent, especially when the bonds, as is usually the case, have been negotiated for value." This doctrine, so clearly stated, is well established by adjudged cases.

When, under a law of Connecticut, bonds had been issued by the city of New London to a railroad company, which could only issue by the approval of two-thirds of the electors present at a city meeting held for that purpose, and such bonds had been publicly sold, their validity recognized in various ways, and among others by the payment of semi-annual interest thereon during a period of seven years, and "no citizen had taken any means to prevent the sale of the bonds or the payment of the interest," it was held by the supreme court of errors of the state of Connecticut in *Society for Savings* agt. *The City of New London* (29 *Conn.,* 174), "that the city in those circumstances was equitably estopped from denying the validity of the bonds against parties who held them in good faith, and that individual citizens and taxpayers, having thus acquiesced in the conduct of the city, were equally estopped from denying their validity, so far as these individuals were concerned."

The case just referred to was a very important one; it was most fully and elaborately argued, and the unanimous opinion of the court, prepared by ELSWORTH, J., is worthy of a careful study. The comments of the learned judge on pages 192, 193 and 194, upon the attempted repudiation by the city of New London of the obligations, after being acquiesced in by it and its citizens, are especially applicable to the case before us.

The doctrine of the Connecticut case — that municipal corporations, which have power to appoint agents to issue for them obligations, may, like individuals, adopt and make valid an act, which was in the beginning insufficiently authorized — is also maintained in *Stuart* agt. *School District No.* 1 *of Kalamazoo* (30 *Mich.*, 69; *opinion by* COOLEY, *J.*), in *State* agt. *Van Horne* (7 *Ohio St. R.*, 327), in *Tash* agt. *Adams* (10 *Cush.*, 252), in *Zabriskie* agt. *C. C. and C. R. R. Co.* (23 *How.* [*U. S.*], 281, 400), in *Supervisors* agt. *Schenck* (5 *Wall.*, 772; *see pages* 781, 782 *and* 783), in *Pendleton County* agt. *Amy* (13 *Wall.*, 297, 298) and in *County of Clay* agt. *Society of Savings* (104 *U. S. R.*, 579).

The same rule of law, or the principles on which it depends, has also been repeatedly held in this state.

Thus in *Hoyt* agt. *Thompson's Executors* (19 *N. Y.*, 206) it was decided that "a corporation may ratify the unauthorized acts of its agents, which are within the corporate powers, and such ratification may, it seems, be held from acquiescence merely."

In *Peterson* agt. *Mayor of New York* (17 *N. Y.*, 449) it was held, "A resolution *adopting* the plans, working drawings, &c., prepared by an architect, *at the request of a committee not empowered for that purpose*, and directing the erection of a market according to such plans, &c., the resolution being passed with notice of the facts, is a *ratification* as effectual to bind the city as an *original employment* by an express resolution."

In *New York and New Haven Railroad Company* agt.

*Schuyler and others* (34 *N. Y.*, 30, 49) it was held that " a
corporation is liable to the same extent and under the same
circumstances as a natural person for the consequences of its
wrongful acts, and will be held to respond in a civil action at
the suit of an injured party for every grade and description
of forcible, malicious or *negligent* tort or wrong which it
commits, however foreign to its nature *or beyond its granted
powers* the wrongful transaction or act may be." And it was
further held in the same case (*page* 63) that " it is a well
recognized branch of the law of principal and agent that
without any express or implied appointment an *implied
agency* may arise from the conduct of a party."

In the case last referred to The New York and New Haven
Railroad Company was held liable for the losses which inno-
cent buyers had sustained by the purchase of certificates of
stock, in excess of its capital, issued by one Schuyler, not
because he was actually empowered to issue them but because
the company, by its action and conduct, was estopped from
denying an agency or authority in him to do for and in its
behalf the acts by which others had been injured.

The foregoing authorities abundantly establish the proposi-
tion that corporations, municipal or other, and their taxpayers
or stockholders may, as private individuals in the conduct of
their affairs, so conduct themselves as to be estopped from
questioning the authority of a person who has assumed to act
in their behalf; and that the recognition and adoption by them
of acts professed to have been done for them may bind them
as effectually as the conferring of the power so to do prior to
their being done. A recital of the facts of this case will show
the applicability of this principle to its decision, and they are
again stated in this connection.

It is conceded that a large number of the taxpayers of the
town, and professing to be a majority thereof, representing a
majority of its property, asked the county judge of the county
in which the town was situated for a judgment and action
which would permit the issue of the bonds now sought to

be annulled; that such judge, assuming to act in conformity with the requirements of the law, after notice, determined and adjudged that a majority of taxpayers and property had petitioned for the issue of such bonds, which judgment was entered of record; that then such judge appointed commissioners to issue the obligations of the town, which obligations were issued, and contain recitals showing their regularity, and assuming that all necessary and legal action had been taken to make them valid and binding upon the town; neither the municipality nor any taxpayers since the rendition of such judgment and the appointment of commissioners on May 22, 1871, sought to review such judgment or to prevent the issue of the bonds, either of which could readily have been done; for ten years, twice during the year, the interest has been paid upon the bonds thus issued by the proper officers of the town, its taxpayers without objection paying the amount levied upon them for that purpose, and now, after the money necessary to pay the interest for the year 1882 has been collected from the taxpayers and is in the treasury of the town for that purpose, this action, the first one instituted, is brought to restrain such payment and to declare the entire issue illegal and void. In other words, both the municipal corporation and its taxpayers have, by both negative and affirmative action, ratified the action of the commissioners, declared over and again that the bonds were precisely what they purport to be, the valid obligations of the town issued under the authority of law and in accordance therewith, and now, when others have in good faith become the owners thereof, and the town and its inhabitants have had and now have whatever of benefit or advantage the expenditure of the money realized from their sale has created, an attempt is made by the action of courts, which should do justice and equity, to throw upon others the burdens which they voluntarily assumed, and which they had repeatedly stated, by acts of the most unequivocal character, they would cheerfully sustain.

Calhoun agt. Delhi and Middletown Railroad Company.

It is not denied that the bonding of towns in aid of railroads has imposed great burdens, and in many cases great injustice was originally perpetrated. Whatever action was taken in the bonding of the town of Andes was nevertheless voluntary. If the taxpayers were originally imposed upon, the law provided a remedy. They were not compelled either to submit to the issue of the obligations nor to the payment of interest thereon. The courts were open for redress. In this, as in many other instances, they were willing to have the world regard the obligations in controversy as instruments issued by their authority until all were marketed to strangers to the entire transaction. Their conduct has deceived the parties whose money has purchased the evidences of indebtedness before their maturity. Such buyers could only see apparently valid obligations, an apparently valid judgment, and recognition, year after year, of what the bonds and judgment declared. A stronger case for the application of the doctrine of acquiescence cannot well be presented, and because of such acquiescence both by the town of Andes and its taxpayers in the validity of the bonds, such acquiescence amounting to an actual adoption of them as the legal acts of the town, such town and its taxpayers must be held to be estopped from questioning their validity.

For the reasons which have been given the order appealed from must be affirmed, with costs.

Mem. by LEARNED, J. — I concur in the result. But I am not willing to say that the payment of interest is an estoppel; at least as to any persons, except those who may have purchased bonds, relying on the fact of previous payments of interest by the obligors.